UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,

v.                                        CASE NO.: **3:21-cr-00121-HES-MCR**

**JUAN CARLOS ARTEAGA**

_____

## DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, **JUAN CARLOS ARTEAGA,** by and through his undersigned counsel, hereby files this memorandum of law for the Court's consideration at the sentencing hearing in this case, and states the following:

## MEMORANDUM OF LAW

The Supreme Court in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738. 755 (2005) made the federal sentencing guidelines advisory and thus drastically changed the way a district court conducts a sentencing hearing. After *Booker*, sentencing requires two steps. First, the district court must consult the Guidelines and correctly calculate the range provided by the Guidelines, including adjustments and departures called for under the guidelines. *Gall v. United States*, 128 S. Ct. 586, 596, 169 L.Ed.2d 445 (2007), *United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005). Second, the district court must give each side the opportunity to argue for whatever

sentence they deem appropriate and then must consider the statutory factors of 18 U.S.C. § 3553(a). The sentencing court may not presume that the Guidelines range is reasonable. *Gall*, 128 S. Ct. at 596-597.

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify the crime and the punishment to ensue." *Gall v. United States*, 128 S. Ct. 586, 598 (2007) (citing *Koon v. United States*, 518 U.S. 81, 113, 116, S. Ct. 2035, 135 L.Ed.2d 392 (1996)).

In determining the reasonable sentence which satisfies the purposes of sentencing, the Defendant asks the court to consider the following:

1. **BACKGROUND**

    A. **THE NATURE & CIRCUMSTANCES OF THE OFFENSE.**

    Count I-Wire Fraud in violation of 18 U.S.C section 1343.

    B. **HISTORY AND CHARACTERISTICS OF DEFENDANT**

    1. **Early Childhood.** The Defendant had a tremendously turbulent childhood. The parents of the Juan Arteaga were fleeing communist Cuba. Mr. Arteaga was four and half years old

when his mother and brother were allowed to leave Cuba on October 20, 1967. His father because he had the profession of a medical doctor was not allowed to leave Cuba and join his family in the United States until September 1968. Mr. Arteaga family first moved into a one-bedroom apartment in New Jersey. Later in 1968 the family moved in with the father's brother in a small home in Miami, Florida. The family lived in Miami until 1969 when the father of Juan Arteaga took a job as a physician's assistant in Ohio. The family then moved to New York when Mr. Arteaga was in the third grade. The family then moved to Jacksonville, Florida when Mr. Arteaga was in the fifth grade.

2. **Physical condition of defendant**. Mr. Arteaga was born on June 18, 1963. Mr. Arteaga is now almost 59 years old. Mr. Arteaga is 5 foot and 7 inches tall. Mr. Arteaga suffers from sleep apnea (uses a CPAP machine), Asthma, Diabetes, Hypertension and currently has suffered heart problems (The defendant is currently wearing a pace maker. The defendant suffered a pleural effusion arrhythmia atrial fibrillation congestive heart failure in June of 2019 in Texas).

Mr. Arteaga medication is listed on page 13 of the PSR. The medications are for the following ailments (1) Heart failure

(2) Heart failure (prevention of blood clots) (3) Hypertension (4) Asthma (5) High cholesterol in the blood (6) Allergies and (7) Type 2 Diabetes.

3. **Mental Health of defendant.** The defendant attempted suicide in December of 2018 by taking to many pills. The wife of the Mr. Arteaga stated in the PSR that Mr. Arteaga has attempted suicide on two different occasions.

4. **Defendant's Children.** The defendant has raised two children that are productive citizens. Mr. Arteaga's son is detective with the Jacksonville Sherriff Office. Mr. Arteaga's daughter is an Intensive Care Unit nurse in Texas. Mr. Arteaga remains married to his high school sweet heart Doreen Arteaga.

2. **THE NEED FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE.**

In this case, there has been a violation of the law. Accordingly, the crime should be punished in some fashion.

3. **THE NEED FOR DETERRENCE & THE NEED TO PROTECT THE PUBLIC**

The Defendant understands he will be given a sentence. The defendant has expressed extreme remorse for his offense.

## 4. THE NEED TO PROVIDE THE DEFENDANT WITH NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE

This directive to the Court is difficult to address since it conflicts the instructions given to the Sentencing Commission in 28 U.S.C. § 994(k), which states that the "Commission shall insure that the guidelines reflect the general *inappropriateness* of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment." (Emphasis added).

The defendant is in need of mental health counseling and medical care.

## 5. THE KINDS OF SENTENCES AVAILABLE

The sentencing court is not bound by the guideline chart and its division into zones to determine whether a sentence of imprisonment is required or reasonable. Pursuant to 18 U.S.C. § 3582, the court is directed that "in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, the length of the term" it shall "consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate

means of promoting corrections or rehabilitation.

### 6. THE NEED TO PROVIDE RESTITUTION TO VICTIMS

There is restitution required for these offenses. 18 U.S.C. section 3663.

### 7. THE APPLICABLE SENTENCING GUIDELINES RANGE

The advisory guideline provision as calculated by the probation officer is offense level 20 and a criminal history category I, the guideline imprisonment range is 33 months to 41 months.

### 8. DEFENSE ARGUMENT FOR DOWNWARD VARIENCE

The Defense will be arguing for a sentence of one day in prison followed by period of Home Detention and Supervised Release.

The defense is requesting a Downward Variance because of (1) Mr. Arteaga's personal history, (2) Age of Mr. Arteaga, (3) Mr. Arteaga is a first-time offender, (4) Federal Advisory guideline is significantly greater than any prior sentence since Mr. Arteaga has not served a sentence in the past, (5) Effect of imprisonment on a third party, (6) Mr. Arteaga's need for medical care and (7) Mr. Arteaga's extreme remorse.

## 9. VARIENCE DOWNWARD DUE TO THE DEFENDANT'S PERSONAL HISTORY

"It requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens." *Santosky v. Kramer*, 455 U.S. 745, 789 (1982) (Rehnquist, J., joined by Burger, C.J., White, and O'Connor, J., dissenting). *See also United States v. Rivera*, 192 F.3d 81, 84 (2d Cir. 1999) ("It seems beyond question that abuse suffered during childhood - at some level of severity - can impair a person's mental and emotional conditions"). Therefore, district courts have commonly granted sentencing reductions where a defendant was victimized as a child. *See, e.g., United States v. Walter*, 256 F.3d 891 (9th Cir. 2001) (combination of brutal beatings by defendant's father, introduction of drugs and alcohol by his mother, and, most seriously, the sexual abuse by his cousin, which defendant suffered at young age, constituted the type of extraordinary circumstances justifying consideration of the psychological effects of childhood abuse and diminished mental capacity under § 5K2.13); *United States v. McBride*, 511

F.3d 1293 (11th Cir. 2007) (affirming sixty-seven month departure where court considered the murder of defendant's father, sever physical abuse defendant suffered at the hands of mother and uncle, sexual abuse he suffered by grandfather, and having been shuffled between foster homes until adulthood); *United States v. Patzer*, 548 F.Supp. 2d 612 (N.D. Ill. 2008) (imposing 13 years despite Guidelines range of 346-411 months in career offender case, partly in consideration of defendant's difficult childhood with an abusive family and undiagnosed ADHD); *United States v. Somerstein*, 20 F. Supp 2d 454 (E.D.N.Y. 1998) (granting a downward departure under § 5K2.0 based in part on defendant's difficult child victim of the Holocaust); *United States v. Ayers*, 971 F. Supp. 1197 (N.D. Ill. 1997) (granting departure based upon cruel childhood with relentless physical, sexual and psychological abuse over course of years).

This variance is applicable to the defendant but not in the standard fashion. This variance is applicable because of the family's fleeing communist Cuba, the almost year separation of the father from the family, leaving their personal effects behind in Cuba and as a child the defendant constantly moving from state to state and from home to home.

## 10. VARIENCE DOWNWARD DUE TO THE DEFENDANT'S AGE

"Recidivism rates decline relatively consistently as age increased," and defendants "over the age of forty...exhibit markedly lower rates of recidivism in comparison to younger defendants." See U.S. Sentencing Comm.'s Measuring Recidivism: The Criminal History Computation of the Federal Sentencing guidelines at 12, 28, (2004). Sentencing courts have recognized this and granted reductions accordingly. See, e.g., *United States v. Saenz-Nunez*, 2011 WL 6013477 (D. N.M. Nove. 28, 2011) (granting four level downward departure in part because, at 53 years old defendant was less likely to recidivate);*United States v. Phinney*, 599 F. Supp. 2d 1037 (E.D. Wis. 2009) (sentencing child pornography defendant to six months custody despite Guidelines range of thirty-seven to forty six, citing defendant's reduced recidivism potential because of his age as well as his health problems with would be better treated in the community); *United States v. Nellum*, 2005 WL 300073 (N.D. Ind. Feb3, 2005) (departing downward sixty months for fifty-seven year old defendant convicted of distributing crack based on lower recidivism rates for older defendants). *United States v. Gray*, 453 F.3d 1323 (11th Cir. 2006 (variance form 151 months to

impose 72 months in distribution of pornography case was reasonable in light of defendant's history and characteristics, i.e., the defendant was sixty-four, had never molested a child, suffered from depression, and had attempted suicide several times; US. DEPT OF JUSTICE OFFICE OF THE INSPECTOR GENERAL, The Impact of an Aging Inmate Population on the Federal Bureau of Prison, 9,10 (May 2015) (reporting that older adults are vulnerable to abuse and victimization by younger inmates).

Mr. Arteaga is now almost 59 years old. The defense would argue that Mr. Arteaga's chance of recidivism is minimal. Since the Spring of 2019 Mr. Arteaga has been a productive citizen while working in Texas.

**11. VARIENCE DOWNWARD DUE TO THE FEDERAL ADVISORY GUIDELINE SENTENCE IS SIGNIFICANTLY GREATER THAN ANY PRIOR SENTENCE DEFENDANT HAS SERVED IN THE PAST**

The defense would make the argument that an advisory guideline sentence of 33 months to 41 months is much greater than any previous sentence received by the defendant since Mr. Arteaga is a first-time offender and has never been sentenced to jail previously. See *United States v. Mishoe*, 241 F.3d 214 (2nd Cir. 2001) when determining whether a departure is warranted,

sentencing court may consider the amount of time a defendant previously served compared to the sentencing range called for under the Guidelines.

12. **VARIANCE DOWNWARD DUE TO THIS BEING MR. ARTEAGA'S FIRST CONVICTION**

For first-time offenders, long periods of incarceration can do more damage than good by isolating individuals from their communities. "When prison sentences are relatively short, offenders are more likely to maintain their ties to family, employer, and their community, all of which promote successful reentry into society. Conversely, when prisoners serve longer sentences, they are more likely to become institutionalized, lose pro-social contacts in the community, and become removed from legitimate opportunities, all of which promote recidivism." Valerie Wright, *Deterrence in Criminal Justice, The Sentencing Project*, at 7 (Nov. 2010). Indeed, studies reveal that low-risk offender who are sentenced to long periods of incarceration are more likely to reoffend. Id. See also *United States v. Baker*, 445 F.3d 987 (7th Cir. 2006) (affirming downward variance, justified in part by court's finding that prison would mean more to this defendant than one who has been imprisoned before).

Mr. Arteaga is a first-time offender.

### 13. VARIANCE DOWNWARD DUE TO EFFECT OF IMPRISONMENT ON THIRD PARTIES

The guidelines discourage departures on the basis of extraordinary family circumstances or the harsh effect of a defendant's incarceration on innocent family member. U.S.S.G. section 5H1.6. Nevertheless, sentencing court have granted downward variances on this basis. See *United States v. Antonakopoulos*, 399 F2d 68 (1st Cir 2005) (on remand of bank fraud case, district court may consider defendant's role as a caretaker for brain-damaged son even though alternative means of care existed); *United States v. Dominguez* 206 F.3d 192(3d Cir. 2002) (district court erred in concluding that it could not depart four levels in bank fraud case for defendant who resided with elderly parents, who were physically and financially dependent on her); *United States v. Lehmann*, 513 F.3d 805 (8th Cir. 2008) (sentence of probation affirmed where justified by the specials nature and circumstances of the felon in possession case and by the defendant's need to care for her developmentally-disabled son.

Mr. Arteaga is concerned that with out his contribution to

the family income his 58-year-old wife may be left destitute.

## 14. VARIANCE DOWNWARD DUE TO MR. ARTEAGA'S NEED FOR MEDICAL CARE

A court may vary or depart downward based on the medical needs of a defendant. See U.S.S.G. section 5J1.4 ("An extraordinary physical impairment may be a reason to depart downward") In *United States v. Alemenas*, 553 F.3d 27 (1st Cir. 2009) the court varied downward bases on defendant's chronic neck pain, and mental and emotional condition. In *United States v. Duhon*, 541 F.3d 391 (5th Cir. 2008) the upholding probation for possessing fifteen images of child pornography, despite Guidelines range of twenty-seven to thirty-three months, in light of first-time offender's need to continue medical treatment with his psychologist. In *United States v. McFarlin*, 535 F.3d 808 (8th Cir. 2008) three years of probation was imposed for conspiracy to distribute cocaine rather than sixty-month Guideline's term, based on fifty-four-year-old's serious health problems and extraordinary post-arrest rehabilitation. Sentencing courts may also consider the increased cost of medical care for the Bureau of Prisons. See U.S.S.G section 5H1.4. In the case of a seriously infirm defendant, home

detention may be as efficient as and less costly than imprisonment. In *United States v. Park*, 758 F.3d 193, 198 n. 19 (2d Cir. 2014) the Court cites Section 5H1.4 as "the only Guidelines provision which seems to allow departures on the basis of cost".

Mr. Arteaga was born on June 18, 1963. Mr. Arteaga is now almost 59 years old. Mr. Arteaga is 5 foot and 7 inches tall. Mr. Arteaga suffers from sleep apnea (uses a CPAP machine), Asthma, Diabetes, high blood pressure, high cholesterol in the blood and congestive heart failure. Mr. Arteaga is constantly using his inhaler to treat his asthma. The defendant is currently wearing a pace maker. The defendant suffered a pleural effusion arrhythmia atrial fibrillation congestive heart failure in June of 2019 in Texas. Mr. Arteaga has a machine (beside the CPAP machine) that monitors his pacemaker everyday and sends reports to the doctor's office directly. The machine is Medtronic MyCareLink cardiac resynchronization therapy mri sure scan monitor system (model 24952) that Mr. Arteaga can not travel without. The most Mr. Arteaga can be away from this machine is 24 hours. Once a month Mr. Arteaga has to take the scanner off the device and place it over his chest and pacemaker

for a manual reading.

### 15. Extreme Remorse

District Court have varied downward based on a defendant's exhibition of remorse. (See United States v. Howe, 543 F.3d 128 (3d Cir. 2008) (affirming downward variance to probationary sentence based in part on a finding of "heartfelt remorse" in Howe's allocution, even though Howe disputed a fraudulent intent in trial and pursued a defense of blaming a third party); In United States v. Stall 581 F.3d 276 (6th Cir. 2009) affirming sentence of one day incarceration plus ten years supervised release in child pornography case where defendant expressed "immediate, unconditional remorse" both at time of arrest and throughout his post-arrest mental health treatment); United States v. Stern, 590 F. Supp. 2d 945 (N.D. Ohio 2008)(imposing twelve months and a day rather than the forty-six to fifty-seven month Guideline range for child pornography possession by a defendant in part based on defendant's "credible if obviously well-coached" expression of remorse as well as statement from defendant's therapist that he was genuinely remorseful)

Mr. Arteaga has expressed his extreme remorse to his family and friends for his offense. On page 12 paragraph 47 of the PSR

he has admitted that his marriage has suffered due to his lies and manipulation. Mr. Arteaga has had the burden to shoulder to know that his children have been extremely disappointed in him (paragraph 48 page 12 of the PSR). Mr. Arteaga has felt the rebuke of his parents when he confided in them about the offense (paragraph 55 page 12 of the PSR). Mr. Arteaga's depression and anxiety has led to two suicide attempts. The undersigned attorney would argue that the mere contemplation of a suicide attempt demonstrates Mr. Arteaga's extreme remorse for his offenses.

## CONCLUSION

*"I HAVE ALWAYS FOUND THAT MERCY BEARS RICHER FRUITS THAN STRICT JUSTICE"*

ABRAHAM LINCOLN, SPEECH IN WASHINGTON D.C., 1865

In *Gall*, the Court quoted from the district court's order which stated that "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." 128 S. Ct. at 586. This is just such a case.

The sentencing procedure set forth in *Gall* necessitates a

case-by-case approach, the hallmark of which is flexibility. In the last analysis, a sentencing court should not consider itself constrained by the guidelines to the extent that there are sound, case-specific reasons for deviating from them. Nor should a sentencing court operate in the belief that substantial variances from the guidelines are always beyond the pale. See *United States v. Martin*, 520 F.2d 87, 91 (1st Cir. 2008).

LAW OFFICE OF JAMES A. HERNANDEZ

/s/   James A. Hernandez
**JAMES A. HERNANDEZ, ESQUIRE**
Florida Bar No. 0871303
118 W. Adams St., Ste 500
Jacksonville, FL 32202
Tel. (904) 354-4499/
**ATTORNEY FOR DEFENDANT**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to the Assistant U.S. Attorney Ms. Ashley Washington, Esquire, 300 North Hogan Street, Suite 700, Jacksonville, Florida 32202, electronic filing, this 22nd day of March 2022.

//S// James A. Hernandez
_____

James A. Hernandez
Attorney for Defendant